ORIGINAL

FILED
DEC 22 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| D & D LANDHOLDINGS, a limited partnership, Plaintiff, | No. 06-877 L |
| v. | Judge ______ |
| UNITED STATES, Defendant. | |

**COMPLAINT FOR JUST COMPENSATION**

This is a suit by a landowner, under the Fifth Amendment of the United States Constitution, to recover just compensation for the physical taking of approximately 150 acres of prime development land located in eastern San Diego County, California, near the border with Mexico. The United States, acting through agents for the Customs and Border Protection, has physically entered onto Plaintiff's land continuously for several years, and has intentionally channeled illegal immigrants onto Plaintiff's land for roundup and arrest. In addition, Border Patrol agents have repeatedly chased Plaintiff off its own land, demanding proof that Plaintiff is entitled to be there.

**Parties**

1. Plaintiff, D & D Landholdings, is a limited partnership organized under the laws of the State of California and the owner in fee of several parcels of land in the Otay Mesa area of San Diego County, amounting to 147.84 acres. These parcels, which are shown in pink on Exhibit A, are zoned for heavy to light industrial use, and are in various stages of grading development.

2. Defendant, United States of America, is a republic formed pursuant to the Constitution of the United States, and exercising the powers described therein subject to certain limitations, including the Fifth Amendment to the United States Constitution, which prohibits the taking of private property for public use without payment of just compensation.

**Jurisdiction**

3. This Court has jurisdiction of this case under 28 U.S.C. § 1491 (the Tucker Act) as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States . . . ."

**Operative Facts**

4. Plaintiff's land is designated on the Regional Plan for San Diego County for development as heavy to light industrial use. Plaintiff acquired its property for the purpose of developing it as heavy to light industry, a highly valuable use.

5. In the early 1990s, the United States began construction of the San Diego Border Primary Fence that now stretches from the Pacific Ocean 14 miles eastward toward Plaintiff's property. The Primary Fence begins at the Pacific Ocean. It is 11 feet high and is made of steel matting, and is presently outfitted with infrared surveillance cameras and stadium lighting. According to the U. S. Border Patrol, this barrier has cut the number of illegal immigrants caught from about 530,000 in 1993 to 127,000 in 2004.

6. In 2001, the United States completed construction of nine miles of a Secondary Fence, which runs parallel to the Primary Fence. The Secondary Fence, which is made of steel mesh, begins three miles from the Pacific Ocean, and travels eastward, parallel to and approximately 130-150 feet north of the Primary Fence; the Secondary Fence currently ends approximately three quarters of a mile south and a quarter of a mile west of the eastern terminus of Plaintiff's property, as shown on Exhibit A. The United States is

currently constructing one additional half mile of the Secondary Fence, extending it further east.

7. The direct, foreseeable, and intended effect of Defendant's border control fencing system and the completion of the Secondary Fence, was to channel illegal immigrants crossing the border from Mexico, eastward away from the city of San Diego, and onto Plaintiff's property, where United States Border Patrol agents can detain, arrest, and deport these individuals.

8. The Border Fence has operated as it was designed, channeling illegal immigrants eastward away from the city onto Plaintiff's property, where they can be rounded up, arrested, and deported. Since the Fence has not yet been completed, however, it now terminates near Plaintiff's property and, consequently, the roundup and arrest of illegal aliens takes place on Plaintiff's property almost daily. Border Patrol vehicles speed across Plaintiff's property, and vans or buses are brought in to haul away the illegal immigrants.

9. Beginning in 2001, Border Patrol activity on the property escalated to such a degree that Plaintiff was no longer welcome on its own land. Border Patrol agents routinely chase Plaintiff off its own property, and some agents have even told Plaintiff's representatives

that the United States owns the subject property. The Border Patrol activity has become so invasive that tenants are even afraid to lease Plaintiff's land.

10. Thus, as a direct, foreseeable and proximate result of the United States' construction and operation of the Border Fence, Plaintiff's property has been taken for public use.

11. Despite the mandatory requirement of the Fifth Amendment, Plaintiff has not been paid just compensation for the property that the United States has taken.

12. At this time, Plaintiff is uncertain of the fair market value of the property taken. Plaintiff will seek leave of this Court to amend this Complaint to conform to proof of fair market value at trial.

## CLAIM FOR RELIEF
## JUST COMPENSATION FOR PROPERTY TAKEN

13. The Constitution of the United States requires that Defendant United States pay to Plaintiff just compensation for all property taken for public use.

14. To date, Defendant United States has paid nothing to Plaintiff as compensation for the property it has taken for public use, in violation of the Constitution of the United States.

15. As a direct, foreseeable and proximate result of the acts of Defendant, Plaintiff has been damaged in an amount as yet unascertained, equal to the just compensation due it under the Fifth Amendment, including interest thereon at a rate to be established by this Court. Plaintiff will seek leave of Court to amend this complaint to conform to proof of such damages at trial.

16. As a further direct, foreseeable and proximate result of the taking of its property without just compensation, Plaintiff has been required to and has retained the services of counsel to prosecute this action. Plaintiff has incurred, and will incur, attorneys' fees, appraiser and expert witness fees, and costs and expenses of litigation in an amount as yet unascertained. Plaintiff will seek leave of this Court to amend this complaint to conform to proof of such damages at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. A money judgment equal to the just compensation owing to Plaintiff for the permanent taking of its property for public use, together with interest thereon at the legal rate from the date of taking;

2. Reasonable attorneys' fees for the bringing of this action;

3. The expenses of appraisers and other experts reasonably required to prosecute this action, together with other costs of this suit; and

4. Such other and further relief as the Court may deem just.

Respectfully submitted,

Roger Marzulla by Nancie Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: December 22, 2006

Counsel for Plaintiff

EXHIBIT A


N
End of Secondary Fence