**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **D & D LANDHOLDINGS, a limited partnership,** | |
| **Plaintiff,** | |
| **v.** | **No. 06-877 L** |
| | **Hon. Margaret M. Sweeney** |
| **UNITED STATES,** | |
| **Defendant.** | |

# ANSWER

Defendant UNITED STATES hereby responds to the allegations in the numbered paragraphs of Plaintiff's Complaint as follows:

(Unnumbered Paragraph) The first sentence of the unnumbered paragraph at the beginning of Plaintiff's complaint is a characterization of Plaintiff's claim to which no response is required; in response to the factual allegations included therein, Defendant specifically denies that the property at issue in the complaint is prime development land. In response to the allegations of the second and third sentences, Defendant admits that

employees of the Border Patrol, part of the Bureau of Customs and Border Protection, Department of Homeland Security, have entered the property which is the subject of the Complaint (hereinafter, "Subject Property") at different times in the course of authorized law enforcement activities; these entries have occurred since the Border Patrol was officially established in 1924. Since 1952, those entries have been made pursuant to the authority of 8 U.S.C. § 1357(a)(3); see also 5 C.F.R. § 287.1(c).

In further response, Defendant denies that it has intentionally or otherwise channeled aliens onto the Subject Property or that it has repeatedly chased Plaintiff off the Subject Property, and denies that it has demanded proof that Plaintiff is entitled to be there.

1. Defendant lacks sufficient information to admit or deny the allegations contained in this paragraph and, therefore, denies the allegations.

2. In response to the allegations of Paragraph 4, Defendant admits that it is the United States. Additional allegations in this paragraph are conclusions of law to which no response is required.

## Jurisdiction

3. The allegations of Paragraph 5 are conclusions of law to which no response is required. In further response, Defendant admits that 28 U.S.C. § 1491 is the principal statute conferring jurisdiction on the United States Court of Federal Claims to hear Fifth Amendment takings claims.

**Operative Facts**

4. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 4.

5. In response to the allegations of the first sentence of Paragraph 5, Defendant avers that in 1990 it began construction of a 14 mile fence along the international border between the United States and Mexico in the vicinity of San Diego, California (hereinafter, "Primary Fence"). In further response to the allegations of the first sentence, Defendant avers that the fence begins at the Pacific Ocean and extends approximately 14 miles eastward along the border.

In response to the allegations of the second sentence, Defendant admits that the Primary Fence begins at the Pacific Ocean. In response to the allegations of the third sentence, Defendant avers that the Primary Fence is made of steel matting approximately 10-12 feet high. In further response to the allegations of the third sentence, Defendant avers that the

Primary Fence does not include "stadium lighting" or "infrared surveillance cameras;" but notes that lighting and cameras were later installed, and roads were later built, as part of the construction of the Border Infrastructure System ("BIS" or "Secondary Fence"). The BIS also included construction of the Secondary Fence, located north of the Primary Fence, as described further in Paragraph 6. Defendant owns all the property upon which the Secondary Fence is constructed, and the lights and cameras were installed on tall metal poles between the Primary and Secondary Fences. Accordingly, the permanent lights and cameras were, and are, placed only on property owned by the United States. In response to the allegations of the fourth sentence, Defendant avers that the number of illegal immigrants apprehended in San Diego County decreased from 531,889 in Fiscal Year 1993, to 138,608 in Fiscal Year 2004.

6. In response to the allegations of the first sentence of Paragraph 6, Defendant avers that in late 2001, the main sections of the Secondary Fence, constructed as part of the Border Infrastructure System ("BIS"), were completed from the Otay Mesa Port of Entry eastward for 1.5 miles; however, that 1.5 miles of fence was not continuous as it contained gaps where gates or other features were to be installed later. In further

response to the allegations of the first sentence, Defendant avers that an additional .25 miles of fence was constructed in an easterly direction from the previous ending point in late 2005.

In response to the allegations of the second sentence, Defendant admits that the Secondary Fence is made of steel mesh and avers that it begins at a point approximately 3 1/2 miles from the Pacific Ocean and travels eastward, generally parallel to the Primary Fence, with the distances between the two fences currently varying between 70 feet to as much as 380 feet. Defendant lacks sufficient knowledge or information as to the exact distance between the current end of the Secondary Fence and the Subject Property herein; Defendant denies, however, that the location of the Secondary Fence is correctly depicted on Exhibit A.

In response to the third sentence, Defendant avers that an additional approximately one mile of the Secondary Fence remains to be constructed eastward along the border.

7. In response to the allegations of Paragraph 7, Defendant admits that construction of the border fences has assisted in reducing illegal border crossings in the areas where construction has occurred; however, it has not totally eliminated illegal border crossings in those

areas. While the Primary Fence was effective in eliminating drive-through alien and drug smuggling, aliens on foot simply climb over it, and then climb over or cut through the Secondary Fence; aliens also tunnel under the fences. In further response, Defendant denies that the direct, foreseeable or intended effect of the border fences was to channel illegal immigrants onto the Subject Property; and Defendant avers that construction of the border fences in the San Diego area has caused an increase in illegal border crossings in the vicinity of El Centro (approximately 100 miles to the east of the Subject Property), at Yuma AZ, and along the international border with Arizona. In further response, Defendant avers that the number of apprehensions in the vicinity of the Subject Property has decreased historically (1992 to present).

8. In response to the allegations of the first sentence of Paragraph 8, Defendant denies that the border fences were designed to, or has had the effect of, channeling illegal immigrants onto the Subject Property; and avers that the purpose of the Secondary Fence was to deter illegal crossings in the areas where they are most common. See P.L. 104-208, Section 102. In further response to the first sentence, Defendant avers that the construction of the border fences in the San Diego area has caused an

increase in apprehensions in the vicinity of El Centro (approximately 100 miles from the Subject Property), Yuma AZ, and along the international border with Arizona.

In response to the allegations of the second sentence of Paragraph 8, Defendant admits that the San Diego segment of the Secondary Fence currently ends in the vicinity of the Subject Property. In further response to the second sentence, Defendant admits that the apprehension of illegal aliens on the Subject Property is not an unusual event either today or in the past.

In response to the allegations of the third sentence, Defendant admits that Border Patrol vehicles drive at a speed appropriate to their law enforcement duties; and that vans are utilized to remove apprehended aliens from the Subject Property when the number of apprehensions make such necessary.

9. The allegations of the first and second sentences of Paragraph 9 are denied. In further response, Defendant avers that on July 6, 2006, David Wick was observed driving at a high rate of speed in a vehicle of a type commonly utilized by alien and drug smugglers on a road located on property of the United States, and designed to be utilized for Border Patrol

purposes. The vehicle driven by Mr. Wick was stopped by a Border Patrol agent, at which point Mr. Wick asserted that he owned the property and that he could go wherever he wanted. In response the agent explained to Mr. Wick that the road he was driving on was a government road, but Mr. Wick again asserted that it was his property.

In response to the allegations of the third sentence, Defendant denies that the invasiveness of the Border Patrol activities on the Subject Property has increased in recent times. In further response, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegation that tenants are "afraid" to lease Plaintiff's land.

10. The allegations of Paragraph 10 are conclusions of law to which no response is required; to the extent matters of fact are alleged, they are denied.

11. In response to the allegations of Paragraph 11, Defendant admits that just compensation has not been paid to Plaintiff for the taking alleged in the complaint.

12. The allegations of Paragraph 12 are a characterization of Plaintiff's claims to which no response is required.

## Claim for Relief
## Just Compensation for Property Taken

13. The allegations of Paragraph 13 are conclusions of law to which no response is required.

14. In response to the allegations of Paragraph 14, Defendant admits that just compensation has not been paid to Plaintiff for the taking alleged in the complaint, and denies that Plaintiff's property has been taken for public use.

15. The allegations of Paragraph 15 are conclusions of law to which no response is required; to the extent matters of fact are alleged, they are denied, and Defendant specifically denies that Plaintiff has been damaged or are entitled to just compensation for the taking alleged in the complaint. The balance of Paragraph 15 is a characterization of Plaintiff's complaint to which no response is required.

16. The allegations of Paragraph 16 are conclusions of law to which no response is required; to the extent matters of fact are alleged, they are denied. The remaining allegations are a characterization of Plaintiff's complaint to which no response is required.

## GENERAL DENIAL

The United States denies any and all allegations of the Amended Complaint, whether express or implied, that are not specifically admitted,

denied or qualified herein.

## AFFIRMATIVE DEFENSES

1. Plaintiff asserts claims that are barred, in whole or in part, by the Statute of Limitations. 28 U.S.C. § 2501.

2. Plaintiff asserts claims that are barred, in whole or in part, by the doctrines of laches and equitable estoppel.

3. Plaintiff fails to state a claim upon which relief can be granted.

WHEREFORE, the United States denies that Plaintiff is entitled to the relief prayed for, or to any relief whatsoever, and requests that this action be dismissed with prejudice, that judgment be entered for the United States and that the Court award to the United States all costs and such other and further relief as the Court may allow.

///

Dated: February 16, 2007.

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

/s/ Susan V. Cook
____________________
SUSAN V. COOK
Senior Attorney
E. KENNETH STEGEBY
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0470
Fax: (202) 305-0506
Email: susan.cook@usdoj.gov

Attorney for Defendant

OF COUNSEL:

A. Ted Kundrat
Melissa Erny
U.S. Customs and Border Protection
Department of Homeland Security
Indianapolis, Indiana 46278