IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| D & D LANDHOLDINGS, a limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | No. 06-877 L<br><br>Hon. Margaret M. Sweeney |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff, D&D Landholdings, and Defendant, the United States, hereby submit the following Joint Preliminary Status Report:

**a. Jurisdiction.**

Plaintiffs state that this Court has jurisdiction over this case under the Tucker Act as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States . . ." 28 U.S.C. § 1491.

Defendant states that the Tucker Act, 28 U.S.C. § 1491, is the principal statute conferring jurisdiction on this Court to adjudicate claims of a Fifth Amendment taking.

**b. Consolidation.**

**Defendant's Statement**

Defendant states that this case should be consolidated with International Industrial Park, Inc. v. United States, No. 06-876L, and Otay Mesa Property L.P. et al v. United States, No. 06-167 L. All three cases present the same legal issues and facts such that consolidation of the cases would significantly promote the efficient administration of justice.

Moreover, all three cases were filed by the same attorney of record and a single individual has control over all of the plaintiff entities. The resolution of the allegations raised in all three complaints will involve the same witnesses and substantially the same documents.

In addition, each complaint alleges the same operative facts, covers the same time period, and seeks the same relief. The complaints all contend that the United States, acting through agents for the Customs and Border Protection, has physically entered onto Plaintiffs' land continuously for several years, and that the construction

of fences along the international border either adjacent to, or in the vicinity of, the subject properties has channeled illegal immigrants onto the subject properties.

The parcels of land at issue in this case, and in the other two cases referenced in the first paragraph above, are contiguous. The legal issues and operative facts with respect to the impact of actions of the United States on all the subject properties are virtually identical. The parties anticipate summary judgment briefing in all three of the cases. Since the facts and issues are identical, the prospect of three simultaneous summary judgment briefings would be an example in extreme judicial inefficiency. Accordingly, defendant will be moving to transfer this case and the other indirectly related case, with a suggestion that it be consolidated with the case of Otay Mesa Property L.P. *et al* v. United States, No. 06-167 L.

**Plaintiffs' Statement**

Plaintiffs believe that this case should not be consolidated with any other case, and that Hon. Lawrence M. Baskir has already so held. In an order dated December 14, 2006, Judge Baskir denied an unopposed motion to amend the complaint in the case of Otay Mesa Property L.P. *et al* v. United States, (No. 06-167L), stating that "[i]f they

so choose, D&D Landholdings and International Industrial Park, Inc. may file separate, individual complaints with the Court of Federal Claims." In conformance with Judge Baskir's order, on December 22, 2006, D&D Landholdings and International Industrial Park filed separate complaints; D&D's complaint was assigned to this Court, while International Industrial Park's complaint was assigned to Hon. Thomas C. Wheeler.

Plaintiff's interpretation of the December 14 order is supported by Judge Baskir's earlier order in Otay dated November 1, 2006. That order severed the claims of each of the three named plaintiffs in Otay and directed the Clerk of the Court to treat each plaintiff's claims as separate actions and to assign separate docket numbers to each action. Judge Baskir then consolidated the newly severed actions pursuant to RCFC 42(a). Significantly, and in direct contrast to his November 1 order, Judge Baskir's December 14 order did not direct, or even suggest, that Otay be consolidated in any way with this case. Judge Baskir's different approaches in these orders strongly suggests that he does not view this case as a proper case for consolidation with Otay.

**c. Bifurcation.**

The parties agree that the case should be bifurcated, with liability tried first, and damages tried thereafter if liability is found.

**d. Deferral of further proceedings.**

The parties agree that, at present, further proceedings in this case should not be deferred. However, defendant reserves the right to move to stay this case should its motion to transfer and consolidate not be granted.

**e. Remand or suspension.**

The parties agree that they do not intend to seek a remand or suspension in this case.

**f. Additional parties.**

The parties agree that they do not intend to join any other parties at this time.

**g. Dispositive motions.**

At present the parties intend to file cross motions for summary judgment on liability after the close of discovery.

**h. Relevant Factual and Legal Issues.**

**Plaintiffs' Statement:**

This is a suit by a landowner under the Fifth Amendment of the United States Constitution to recover just compensation for the physical taking of approximately 150 acres of prime development land located in eastern San Diego County, California, near the border with Mexico. The United States, acting through agents for the Customs and Border Protection, has physically occupied Plaintiffs' land 24 hours a day, 7 days a week, continuously for several years, asserting that it has the statutory right to do so. Agents of the United States have even asserted that Plaintiffs' land is government property, and have ordered Plaintiffs' employees off the land.

On Plaintiff's land the United States has constructed and improved roadways for its vehicles, erected other improvements, destroyed Plaintiffs' improvements, and otherwise treated Plaintiff's land as though it belongs to the United States. Government agents state that they make no distinction between government-owned property and Plaintiff's private property in their use and occupancy of it.

The United States has also constructed a 13-mile long border fence which terminates near Plaintiff's property, and serves to channel illegal immigrants around the end of the fence and onto Plaintiff's land. Government agents lie in wait on Plaintiff's land to catch these illegal

immigrants, using sophisticated electronic equipment such as ground vibration sensors, floodlights and night vision scopes.

Defendant has never purchased the right to occupy Plaintiffs' land.

Defendant's asserted affirmative defenses lack merit. This case is ripe for review because Plaintiffs allege a physical taking, for which no exhaustion of administrative remedies is required. This case is timely because Defendant's exercise of dominion did not ripen into ownership until the year 2000 or later. Likewise, this constitutional claim for just compensation is not barred by laches or equitable estoppel.

Plaintiffs have identified the following legal issues for resolution by this Court:

1. Do Defendant's continuous physical occupancy of Plaintiffs' land, creation of roadways and other improvements, and its channeling of a steady stream of illegal immigrants onto the subject property constitute a physical taking for which just compensation is due under the Fifth Amendment?
2. If so, what is the appropriate measure of just compensation damages, including interest?

3. Are Plaintiffs entitled to attorney's fees and other litigation costs, including expert witness costs, and what is the appropriate amount of such fees and costs to be awarded to Plaintiffs?

**Defendant's Statement:**

Plaintiffs own property adjacent to, or in the vicinity of, the United States' border with Mexico near San Diego, California. Because of the proximity of Plaintiff's property to the border, agents of the Border Patrol, part of the Bureau of Customs and Border Protection, Department of Homeland Security, have entered onto the property in the course of their authorized law enforcement activities. These entries have occurred since the Border Patrol was officially established in 1924; since 1952, those entries have been made pursuant to the authority of 8 U.S.C. 1357(a)(3); see also 5 C.F.R. 287.1(c).

As part of its law enforcement duties, the Border Patrol has placed sensors in the ground on properties on the vicinity of the border since at least 1980. The Border Patrol also routinely uses portable floodlights and has done so since 1994; they are placed at ever-changing temporary locations for the purpose of deterrence and to assist in the visibility of Border Patrol law enforcement operations.

In 1990, the United States began construction of a fence along the international border between the United States and Mexico, beginning at the Pacific Ocean, and continuing eastward for approximately 14 miles (hereinafter, Primary Fence). The portions of the Primary Fence nearest the subject property was completed in 1993 as part of what was called "Operation Gatekeeper." At the same time, the number of Border Patrol agents was dramatically increased, which led to an increase, and then eventually a decrease, in the apprehension of illegal aliens. The number of illegal aliens apprehended in San Diego County decreased from 531,889 in Fiscal Year 1993, to 138,608 in Fiscal Year 2004.

Construction of the Secondary Fence, known officially as the Border Infrastructure System, began in 1996. At present approximately 9 of the 14 miles has been constructed. On its eastward end nearest the subject property, approximately one mile remains to be constructed. While portions of the Secondary Fence nearest the subject property were completed in 2001, gaps in the fence remained for various reasons. The land underneath the Secondary Fence has been acquired by the United States through a series of direct condemnations. For a number of reasons, the construction of the

Secondary Fence has not had the effect of channeling illegal aliens onto the subject property.

The legal issue in this case is whether there has been a Fifth Amendment taking of the subject property. This issue includes a determination of the following:

1. Whether Plaintiff's complaint is barred by the statute of limitations;

2. Whether Plaintiffs possess a cognizable property interest in excluding the Border Patrol from the subject property;

3. Whether the physical intrusions at issue establish a Fifth Amendment physical taking; and

4. If so, what is the just compensation, interest, and attorneys fees and costs due Plaintiffs.

**i. Settlement/Alternative Dispute Resolution.**

At this time, and pursuant to Judge Bruggink's May 18, 2006 Order deferring initiation of ADR proceedings in this case, the parties do not believe that any form of alternative dispute resolution would be helpful before the resolution of threshold legal issues presented by this case.

**j. Trial.**

At present, the parties intend to file cross-motions for summary judgment on liability after the close of discovery, thus potentially obviating the need for a trial to resolve the liability issues. If Plaintiffs prevail on the merits, Plaintiffs anticipate that a trial on damages will be required. Plaintiffs have not yet determined where this trial should be held.

**k. Electronic Case Management.**

The parties are unaware at this time of any electronic case management issues.

**l. Other Information for the Court.**

The parties are not aware at this time of any further information that should be brought to the Court's attention.

Counsel represent that the early meeting of counsel occurred on Friday, April 6, 2007, at which the parties discussed the issues set forth in Paragraph 3 of Appendix A of the Rules of the Court of Federal Claims. Counsel represent that they have discussed the initial disclosures required by RCFC 26(a)(1), a discovery schedule, and settlement prospects. Counsel did not exchange specific information on damages computations because no such computations have been

made at this time, and further because counsel have agreed that this case should be bifurcated into a liability phase and a damages phase.

**m. Discovery Plan.**

This case will not require substantial discovery. Accordingly, the parties propose that they shall complete what limited discovery is necessary by July 1, 2007.

Respectfully submitted,

/s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
Gregory T. Jaeger
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ Susan V. Cook
SUSAN V. COOK
Senior Trial Attorney
E. KENNETH STEGEBY
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, DC 20044-0663
(202) 305-0470
(202) 305-0506 (Fax)

Dated: April 10, 2007

Counsel for the United States