# EXHIBIT G

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| OTAY MESA PROPERTY L.P., et al., Plaintiffs, v. UNITED STATES, Defendant. | No. 06-167L<br>Hon. Lawrence M. Baskir |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**NOTICE OF INDIRECTLY RELATED CASES**

Plaintiffs[1], Otay Mesa Property L.P., Rancho Vista Del Mar, Otay International LLC, International Industrial Park, Inc., and D & D Landholdings, hereby respond to Defendant's Notice of Indirectly Related Cases filed pursuant to RCFC 40.2(b), asking this Court to consolidate two newly filed cases, *Int'l Indus. Park, Inc. v. United States*, No. 06-876L, and *D & D Landholdings, a Ltd. P'ship v. United States*, No. 06-877L, with *Otay Mesa Property L.P. v. United States,* No. 06-167L for all purposes. Although Plaintiffs and Defendant have already agreed to joint depositions

[1] This Response to Defendant's Notice of Indirectly Related Cases is filed on behalf of all five Plaintiffs in the three cases Defendant seeks to consolidate, *Otay Mesa Property L.P. v. United States*, No. 06-167L, *International Industrial Park, Inc. v. United States*, No. 06-876L, and *D & D Landholdings v. United States*, No. 06-877L.



PENGAD-Bayonne, N.J. EXHIBIT G

and other discovery in these cases, Plaintiffs submit that a decision on consolidation of all of these five cases for trial is premature for the following reasons: (1) the cases are at materially different stages of discovery, having been filed nine months apart; (2) this Court has already ruled on December 14, 2006, that factual differences among the cases precludes joining these claims in the same Complaint; and (3) as discovery and trial preparation proceed, further factual differences among the cases may develop which would preclude the efficient joint trial of all five claims. Accordingly, Plaintiffs request that the three judges to whom these cases are assigned defer a decision on consolidation for purposes other than discovery until the facts have been more fully developed.

**Factual Background**

This is a physical taking case arising out of the government's occupation of Plaintiffs' several contiguous properties, which are located in California along the U.S./Mexico border, by Border Patrol, National Guard, and other federal agents, whose task is to stem the tide of illegal immigration from Mexico.

Over the last 15 years, the United States has significantly stepped up its efforts to stop illegal immigrants from crossing the border in the San Diego area. In the early 1990's, the United States began construction of the San Diego Border Primary Fence that now stretches from the Pacific

Ocean 14 miles eastward to Plaintiffs' properties. *See* Ex. A. The San Diego County border Primary Fence begins at the Pacific Ocean. It is eleven feet high and is made of steel matting. In 2001, the United States completed construction of nine miles of the Secondary Fence, which runs parallel to the Primary Fence. The Secondary Fence, which is made of steel mesh, begins three miles from the Pacific Ocean, and travels eastward, parallel to and approximately 130-150 feet north of the Primary Fence; the Secondary Fence currently ends at the western terminus of the 74.55-acre parcel of land owned by Otay Mesa Property L.P. *See* Ex. A. The United States is currently constructing one additional mile of the Secondary Fence, extending it further east, to the eastern terminus of the 74.55-acre parcel of land owned by Otay Mesa Property L.P.

The direct, foreseeable, and intended effect of Defendant's construction of the Border Fence, particularly the Secondary Fence, was to channel illegal immigrants crossing the border from Mexico, eastward away from San Diego, and onto Plaintiffs' properties, where United States Border Patrol agents lie in wait to round them up and arrest them. With completion of the Secondary Fence in 2001, the Border Patrol began flooding Plaintiffs' various properties with more and more agents to capture and deport the daily stream of illegal immigrants seeking to flank the Secondary Fence and traverse Plaintiffs' lands. As a result, armed federal agents

have permanently occupied hundreds of undeveloped but highly developable acres of land owned by the five Plaintiffs, and Plaintiffs' agents have actually been chased off their properties by speeding Border Patrol vehicles in hot pursuit.

A few recent examples suffice to illustrate the extent of the intrusion by the Border Patrol. On August 8, 2006, Darryl Griffen, Chief Patrol Agent for the United States Customs and Border Protection, demanded access to a fenced-off portion of land owned by Plaintiff International Industrial Park, Inc., and threatened that "if access is required and we do not have the necessary keys, we may have no choice but to cut your chain and place a lock of our own . . . ." *See* Ex. B. Border Patrol agents routinely chase Plaintiffs off of their own property, and some agents have even told Plaintiffs' representatives that the United States owns the Subject Property. On November 6, 2006, Plaintiff, Otay Mesa Property L.P., discovered that the Border Patrol had pitched tents on its property, and was in fact using its land as a training facility for its agents.

**Procedural History**

Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, owners of adjacent properties along the Mexican border, jointly filed a single Complaint on March 3, 2006. Defendant filed its Answer on August 2, 2006. The parties filed their Joint Preliminary Status

Report on September 19, 2006. The preliminary status conference was held on October 31, 2006. During the preliminary status conference, concerned that "somewhere down the line the facts would diverge for each of the pieces of property," (Status Conference Tr. 16:12-14, Oct. 31, 2006), the Court ordered that the claims of the three Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, be severed and assigned separate docket numbers. (Order at 1, Nov. 1, 2006.) The newly created cases were then consolidated for all purposes under the lead case, *Otay Mesa Property L.P. v. United States*, No. 06-167L. (Order at 2, Nov. 1, 2006.)

As Border Patrol activities continued to expand onto other properties along the border, on December 4, 2006, Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, filed an unopposed motion to amend their complaint to identify these additional lands that had been taken without just compensation. In that same motion, the owners of two additional parcels, International Industrial Park, Inc. and D & D Landholdings, also sought to be added as Plaintiffs in the suit. Although Defendant did not oppose this motion, in its December 14, 2006 Order, this Court denied the request to add the claims of these two new Plaintiffs and their properties to the existing suit, stating that International Industrial Park and D & D Landholdings "may file separate, individual

complaints with the Court of Federal Claims."[2] (Order, Dec. 14, 2006.) In compliance with this Court's December 14, 2006 Order, on December 22, 2006, International Industrial Park, Inc. and D & D Landholdings each filed separate complaints, which were assigned to two separate judges of this Court. Specifically, *Int'l Indus. Park Inc. v. United States,* No. 06-876L, was assigned to Hon. Judge Thomas Wheeler; *D & D Landholdings v. United States,* No. 06-877L was assigned to Hon. Judge Margaret Sweeney.

In light of this Court's December 14, 2006 Order that these be filed as separate suits, Plaintiffs did not file a Notice of Indirectly Related Cases. These Plaintiffs understood this Court's December 14, 2006 Order to have already determined that their claims were not appropriate for consolidation with the claims of Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, which the Court had already consolidated in its November 1, 2006 Order.

## ARGUMENT

[2] That Order did, however, allow the three original Plaintiffs to add new parcels to their Complaint: "Plaintiffs may file an Amended Complaint in the above-captioned case seeking to add the additional parcels of land to the claims of Plaintiff Otay Mesa Property L.P. and Plaintiff Rancho Vista Del Mar." (Order at 1, Dec. 14, 2006.) Accordingly, Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, filed an Amended Complaint on December 21, 2006 adding only the additional parcels of land.

## I. Standards for Consolidating Cases

RCFC 40.2(b) states as follows:

> [W]henever it appears to a party that there are two or more cases before the court that present common issues of fact and that transfer, consolidation, or the adoption of a coordinated discovery schedule would significantly promote the efficient administration of justice, the party may file a Notice of Indirectly Related Case(s).

RCFC 40.2(b).

RCFC 42(a), which grants the Court discretion to consolidate cases, states as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

RCFC 42(a).

The appropriateness of consolidating claims depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation. *Karuk Tribe of Cal. v. United States*, 27 Fed. Cl. 429, 433 (1993) (citing *Bank of Montreal v. Eagle Assocs.,* 117 F.R.D. 530, 532 (S.D.N.Y.1987)). In exercising its discretion to consolidate cases, the Court must first determine whether the cases present a common question of law or fact. *Lowry Econ.*

*Redevelopment Auth. v. United States*, 71 Fed. Cl. 549, 553 (2006). If so, it must next consider whether the interests of judicial economy outweigh the potential for delay, confusion and prejudice that may result from consolidation. *Id.*

**II. Reasons Why A Decision on Consolidation for Trial is Premature.**

The parties themselves have already agreed that depositions and written discovery produced in one of these cases may be used in all, and it may be appropriate for the Court to issue such an order. It is unlikely, however, that the facts proving the physical occupation and taking of one parcel will be the same for all of the other parcels, and it is clear that separate appraisals of each parcel will have to be done to assess damages. For this reason, Plaintiffs request that a ruling on consolidation be postponed until a point closer to trial. Plaintiffs make this suggestion for the following reasons: (1) the cases are at materially different stages of discovery, having been filed nine months apart; (2) this Court has already ruled on December 14, 2006, that factual differences among the cases precludes joining these claims in the same Complaint; and (3) as discovery and trial preparation proceed, further factual differences among the cases may develop which would preclude the efficient joint trial of all five claims. Accordingly, Plaintiffs request that the three judges to whom these cases are assigned defer a decision on consolidation for purposes other than

discovery until the facts have been more fully developed.

First, *Otay Mesa Property L.P.,* No. 06-167L, was filed on March 3, 2006. The JPSR has been filed, the Initial Status Conference has been held, and discovery is set to close in late March, making the case ready for trial by June or July of this year.[3] In contrast, the Complaints in the two new cases, Nos. 06-876L and 06-877L, were filed approximately a month ago. Defendant has not yet filed its Answers in these two cases. JPSR's have not been prepared, nor has an initial Status Conference been held in either case.

Because the various cases are at distinctly different stages of trial preparation, it is unlikely that the new cases could be ready for trial at the same time as the earlier filed cases, casting significant doubt on any judicial economy to be gained. *See, e.g., Lowry Econ. Redevelopment Auth. v. United States*, 71 Fed. Cl. at 553; *see also Lucent Technologies Inc. v. United States*, 69 Fed. Cl. 512, 515 (2006) ("the distinct procedural postures of *AT & T I* and *Lucent* vitiate any judicial economy that might be

[3] In the earlier-filed case, Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, and Defendant exchanged initial disclosures on October 13, 2006, and written discovery requests on November 8, 2006. They exchanged responses to written discovery on December 18, 2006. They have since moved on to depositions, which are scheduled to take place in San Diego, California during the week of February 19, 2007. Discovery is scheduled to conclude in March 2007.

gained by consolidation.").

Second, as Plaintiffs read the December 14, 2006 Order, this Court has already declined to consolidate the claims of International Industrial Park, Inc. and D & D Landholdings with the earlier-filed three consolidated claims. As noted above, the *Otay Mesa Property L.P.* was originally filed as a single claim by three related Plaintiffs, involving three adjacent parcels of land. At the initial status conference this Court first ordered the three claims severed and assigned different docket numbers,[4] then ordered them consolidated. *See* Ex. C (Order, Nov. 1, 2006.) Believing their claims to be similar to the three already consolidated, on December 4, 2006, these two new Plaintiffs, together with the three Plaintiffs who filed the initial case, filed an Unopposed Motion to Amend Complaint in order to join their claims with those already on file. On December 14, 2006, this Court denied the motion. (Order, Dec. 14, 2006.) In denying the motion, this Court stated that "D & D Landholdings and International Industrial Park, Inc. may file separate, individual complaints with the Court of Federal Claims." Order ¶ 3 (Dec. 14, 2006). Plaintiffs complied with this Order by filing separate, individual Complaints on December 22, 2006.

---

[4] No separate docket numbers have yet been assigned to the severed claims of Rancho Vista Del Mar and Otay International LLC, although the Court ordered the claims to be severed and treated as separate actions with separate docket numbers before being consolidated under *Otay Mesa*

Third, in light of the intensely fact-specific nature of taking cases, it is premature for the Court to order a consolidated trial for all Plaintiffs. As the Court noted in severing the initial three cases, each Plaintiff owns a different parcel of land which has been occupied by the Border Patrol at different times and in different ways. (Status Conference Tr. 12:24, Nov. 1, 2006) ("[S]omewhere down the line the facts would diverge for each of the pieces of property."). As a taking claim requires a searching, ad hoc inquiry into the facts of each case (*see Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)) the proof of liability may well vary from Plaintiff to Plaintiff and parcel to parcel, and the proof of damages will certainly be unique to each parcel.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court order that depositions and discovery be coordinated for use in all five cases, but that the three judges to whom these cases are assigned defer a decision on consolidation for purposes other than discovery until the facts have been more fully developed.

Respectfully submitted,

---

*Property L.P. v. United States*, No. 06-167. *See* Order, Nov. 1, 2006.

/s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

Dated: January 25, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 25, 2007, a true and correct copy of the foregoing Plaintiffs' Response to Defendant's Notice of Indirectly Related Cases was sent via electronic mail and postage-paid U.S. mail to:

Susan V. Cook
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
601 D Street, NW
Room 3112
Washington, DC 20004
(202) 305-0470
(202) 305-0506 (fax)
Email: susan.cook@usdoj.gov

/s/ William McGonigle
William McGonigle

# EXHIBIT H

# In the United States Court of Federal Claims

Case No. 06-167L
(Filed: December 14, 2006)

****************************************************
OTAY MESA PROPERTY L.P., et al., *
*Plaintiffs,* *
*
v. *
*
THE UNITED STATES OF AMERICA, *
*Defendant.* *
*
****************************************************

**ORDER**

Plaintiffs filed an unopposed Motion to Amend Complaint on December 4, 2006. The proposed amended complaint seeks to add additional parcels of land to the claims of two existing Plaintiffs, and to add two additional Plaintiffs to the action. **Plaintiffs' Motion is DENIED** and the Court hereby orders the following:

1. Plaintiffs may file an Amended Complaint in the above-captioned case seeking to add the additional parcels of land to the claims of Plaintiff Otay Mesa Property L.P. and Plaintiff Rancho Visto Del Mar. If Plaintiffs do file such an Amended Complaint, they shall label the additional parcels numerically, consistent with the exhibits attached to the original Complaint.

2. Plaintiffs indicated at the Preliminary Status Conference held on October 31, 2006, that there was some degree of common ownership of Plaintiff Otay Mesa Property L.P., Plaintiff Rancho Visto Del Mar, and Plaintiff Otay International LLC. **Plaintiffs shall file a statement, by affidavit or otherwise, laying out the relationship among the Plaintiffs no later than December 29, 2006.**



PENGAD-Bayonne, N.J.
EXHIBIT
H

3. If they so choose, D & D Landholdings and International Industrial Park, Inc. may file separate, individual complaints with the Court of Federal Claims.

IT IS SO ORDERED.

/s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge

# EXHIBIT I

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| OTAY MESA PROPERTY L.P., et al. | ) | |
| Plaintiffs, | ) | No. 06-167 L |
| v. | ) | Hon. Lawrence M. Baskir |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION TO AMEND COMPLAINT**

Pursuant to RCFC 15(a), Plaintiffs Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, move to amend their Complaint to increase the number of acres alleged to have been taken, from approximately 750 acres to approximately 1,300 acres. Pls.' Compl. para. 1. Specifically, Plaintiff Otay Mesa Property L.P. seeks to amend the complaint to increase the number of acres taken from 75 to 154.55 acres. Pls.' Compl. ¶ 1. Plaintiff Rancho Vista Del Mar seeks to increase the number of acres taken from 514 to 736.14 acres. Pls.' Compl. ¶ 2. Plaintiffs also seek to add two related entities as Plaintiffs, D & D Landholdings and International Industrial Park, Inc., both of which own land adjacent to the subject property, which has also been taken by Defendant's actions at issue in this

PENGAD-Bayonne, N.J. EXHIBIT I

lawsuit. Specifically, D & D Landholdings owns 147.84 acres, and International Industrial Park, Inc. owns 96.27 acres. All of the additional land to be added to this lawsuit is immediately adjacent to the subject property.

Plaintiffs' Unopposed Motion to Amend its Complaint should be granted for three reasons. First, this case is at an early stage and discovery has just begun. The parties have not noticed any depositions, and a trial is not scheduled. Therefore, the inclusion of these additional acres and the two related entities as Plaintiffs in this lawsuit at this early point in the litigation will not in any way slow down the progress the parties have been making in preparing this case for resolution by this Court, nor in any way prejudice the Defendant. Second, this amendment is based on the same operative facts as those plead in the original Complaint and raises no new legal theories of liability or recovery. Therefore, Defendant will not be prejudiced by this amendment. Finally, the addition of approximately 550 acres of land and two additional Plaintiffs, D & D Landholdings and International Industrial Park, Inc., will not unnecessarily burden or prejudice Defendant in its preparation of the defense of this case. The additional acres of land are immediately adjacent to the subject

property, and the additional entities are owned by the same people who own the entities that are the Plaintiffs in the original Complaint.

Therefore, because the amendment is timely, is based on the same operative facts and legal theories, and ownership of the additional land and Plaintiff entities is identical to those already in this lawsuit, Plaintiffs urge this Court to grant this motion to amend the Complaint.

Accordingly, and for all of the further reasons set forth in the attached supporting memorandum, the Plaintiffs seek to amend their Complaint to change the number of acres taken from approximately 750 to approximately 1300, and to add two related entities as Plaintiffs.

Respectfully submitted,

s/ Roger J. Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: December 4, 2006

Counsel for Plaintiffs

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| OTAY MESA PROPERTY L.P., et al. | ) |
| Plaintiffs, | ) No. 06-167 L |
| v. | ) Hon. Lawrence M. Baskir |
| UNITED STATES, | ) |
| Defendant. | ) |

**MEMORANDUM SUPPORTING**
**PLAINTIFFS' UNOPPOSED MOTION TO AMEND COMPLAINT**

Pursuant to RCFC 15(a), Plaintiffs Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, move to amend their Complaint to increase the number of acres alleged to have been taken, from 750 acres to approximately 1,300 acres. Specifically, Plaintiff Otay Mesa Property L.P. seeks to amend the complaint to increase the number of acres taken from 75 to 154.55 acres. Plaintiff Rancho Vista Del Mar seeks to increase the number of acres taken from 514 to 736.14 acres. Plaintiffs also seek to add two related entities as Plaintiffs, D & D Landholdings and International Industrial Park, Inc., both of which own land adjacent to the subject property that has also been taken by Defendant's actions at issue in this

lawsuit. Specifically, D & D Landholdings owns 147.84 acres, and International Industrial Park, Inc. owns 96.27 acres. All of the additional land to be added to this lawsuit is immediately adjacent to the subject property.

Plaintiffs' Motion to Amend its Complaint should be granted for three reasons. First, this case is at an early stage and discovery has just begun.[1] The parties have not noticed any depositions, and a trial is not scheduled. Therefore, the inclusion of these additional acres and the two related entities as Plaintiffs in this lawsuit at this early point in the litigation will not in any way slow down the progress the parties have been making in preparing this case for resolution by this Court, nor in any way prejudice the Defendant. Second, this amendment is based on the same operative facts as those plead in the original Complaint and raises no new legal theories of liability or recovery. Therefore, Defendant will not be prejudiced by this amendment. Finally, the addition of approximately 550 acres of land and two additional Plaintiffs, D & D Landholdings and International Industrial Park, Inc., will not unnecessarily burden or prejudice Defendant in its preparation of the defense of this case. The

[1] The parties are currently discussing an enlarged time for completing discovery in this case.

additional acres of land are immediately adjacent to the subject property, and the additional entities are owned by the same people who own the entities that are the Plaintiffs in the original complaint.

Therefore, for these reasons, the amendment is timely, the amendment is based on the same operative facts and legal theories, and the ownership of the additional land and Plaintiff entities are identical to those already in this lawsuit, Plaintiffs urge this Court to grant this motion to amend the Complaint.

**Factual Background**

In the early 1990's, the United States began construction of the San Diego Border Primary Fence that now stretches from the Pacific Ocean 14 miles eastward to the Plaintiffs' properties. *See Exhibit A*. The San Diego County border Primary Fence begins at the Pacific Ocean. It is eleven feet high and is made of steel matting.

In 2001, the United States completed construction of nine miles of the Secondary Fence, which runs parallel to the Primary Fence. The Secondary Fence, which is made of steel mesh, begins three miles from the Pacific Ocean, and travels eastward, parallel to and approximately130-150 feet north of the Primary Fence; the Secondary Fence currently ends at the western terminus of the

74.55-acre parcel of land owned by Otay Mesa Property. *See Exhibit A*. The United States is currently constructing one additional mile of the Secondary Fence, extending it further east, to the eastern terminus of the 74.55-acre parcel of land owned by Otay Mesa Property. *See Exhibit A*.

The direct, foreseeable, and intended effect of Defendant's border control fencing system and the completion of the Secondary Fence, was to channel illegal immigrants crossing the border from Mexico, eastward away from San Diego, and onto the Plaintiffs' properties, where United States Border Patrol agents can detain, arrest, and deport individuals who have entered the United States illegally. It is completion of this Secondary Fence that gives rise to the unconstitutional taking alleged in this case.

**Facts Giving Rise to This Amendment**

Since the original Complaint was filed in this case, Border Patrol activity has expanded onto lots that are contiguous to the parcels that are the subject of the original Complaint, some of which are owned by related entities. *Exhibit C* (Wick Decl. ¶ 5.) Beginning in 2001, the Border Patrol's activity on the properties escalated to such a degree that the Plaintiffs were no longer welcome on their own

land. Recently, the Defendant has enlarged its activities to encompass even more of the Plaintiffs' land. Indeed, on August 8, 2006, Darryl Griffin, Chief Patrol Agent for the United States Customs and Border Protection, demanded access to a fenced-off portion of the Plaintiffs' property, and threatened that "if access is required and we do not have the necessary keys, we may have no choice but to cut your chain and place a lock of our own...." *See Exhibit B*. Border Patrol agents routinely chase the Plaintiffs off of their own property, and some agents have even told the Plaintiffs' representatives that the United States owns the subject property. *Exhibit C* (Wick Decl. ¶ 5.) Finally, on November 6, 2006, the Plaintiffs discovered that the Border Patrol had pitched tents on their property, and was in fact using their land as a training facility for its agents. *Exhibit C* (Wick Decl. ¶ 5.) The Border Patrol's activity has become so invasive that tenants are even afraid to lease the Plaintiffs' land. *Exhibit C* (Wick Decl. ¶ 5.)

The Border Patrol agents have grown so bold that they have expanded their activities to affect additional property owned by Otay Mesa Property L.P. and Rancho Vista Del Mar. Defendant's actions

now affect property owned by D & D Landholdings and International Industrial Park.

**Procedural Background**

Plaintiffs filed their Complaint on March 3, 2006. Defendant filed its Answer on August 2, 2006. The parties filed their Joint Preliminary Status Report on September 19, 2006. The preliminary status conference was held on October 31, 2006. During the preliminary status conference, the Court ordered that the claims of the three Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, be severed and assigned separate docket numbers. Order at 1 (Nov. 1, 2006). The newly created cases were then consolidated for all purposes under the lead case, *Otay Mesa Property L.P. v. United States*. Order at 2 (Nov. 1, 2006).

The parties are currently engaging in discovery, which is scheduled to conclude on February 9, 2007.

## ARGUMENT

### I. Standards for Granting Motion to Amend Complaint

RCFC 15 states as follows:

> (a) Amendments. . . . [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and

> leave shall be freely given when justice so requires. . . .
>
> (d) Supplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

RCFC 15(a), (d).[2]

Courts construing RCFC 15 have held that "leave shall be freely given when justice so requires." *Scott Timber Co. v. United States*, 44 Fed. Cl. 170, 181 (1999); *see also Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989) (holding that the grant or denial of an opportunity to amend pleadings should be exercised liberally to permit such amendments). Indeed, the Supreme Court has stated that refusing to grant an amendment without any "justifying reason" is an abuse of discretion:

---

[2] Since RCFC 15 is similar in text to Rule 15 of the Federal Rules of Civil Procedure, case law construing the Federal Rules of Civil Procedure may be used to interpret the Rules of the Court of Federal Claims. *Hickman v. United States,* 43 Fed. Cl. 424, 439 (1999).

> Of course, the grant or denial of an opportunity to amend is within the discretion of the . . . Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

In *Foman v. Davis,* the Supreme Court identified five factors for determining if a motion to amend should be granted: undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility. *Id.* Defendant, as the nonmoving party, bears the burden of showing that it will be prejudiced by this amendment. *Scott Timber Co. v. United States*, 44 Fed. Cl. 170, 182 (1999).

The touchstone of determining a motion to amend a complaint is whether the amendment will prejudice the nonmoving party. *Cornell & Co. v. Occupational Safety and Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir. 1978) ("[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment"); *United States v. Hougham,* 364 U.S. 310, 316 (1960) (rule 15 of the Federal Rules of Civil Procedure was designed to facilitate the

amendment of pleadings except where prejudice to the opposing party would result).

"[T]he non-movant has the burden of showing that 'it will be severely disadvantaged or incapable or presenting facts or evidence' on the new issue." *Scott Timber Co.*, 44 Fed. Cl. at 182 (quoting *Crosky v. United States,* 24 Cl. Ct. 420, 422 (1991)); *see also Cornell & Co.,* 573 F.2d at 824-25 (amendment was prejudicial where it drastically changed legal and factual matters in dispute, preventing defendant from securing testimony necessary to assert affirmative defense).

This Court has held that the nonmoving party is prejudiced if the amendment introduces new legal theories that require the non-movant to conduct extensive research shortly before trial. *State of Alaska v. United States,* 15 Cl. Ct. 276, 279-280 (1988). But, as the court has also held, the simple inconvenience of having to respond to an amended complaint is not prejudice for purposes of denying a motion to amend. *Scott Timber Co.,* 44 Fed. Cl. at 182; *see also Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir. 1982) (where the facts as set forth in [plaintiff's] original complaint would support [the amended]

cause of action, the amended complaint is not so different as to cause prejudice to the defendants).

Here, Defendant cannot meet its burden of showing that the proposed amendment would prejudice it in any way; the amendment is timely; the amendment raises no new legal theories; and, the claims of the additional acres of land and Plaintiffs involve the same owners, the same operative facts, and land adjacent to the same parcels as those in the original complaint. Accordingly, Plaintiffs' motion to amend should be granted.

## II. Because This Litigation Is at an Early Stage, This Amendment Will Not Prejudice Defendant

Delay, without some showing of prejudice, bad faith, or futility is insufficient to deny a motion to amend a complaint. *State of Alaska,* 15 Cl. Ct. at 280 (*excessive* delay in certain circumstances can be a reason for such denial; however mere delay, without some showing of prejudice, bad faith, or futility is insufficient to deny a motion to amend a complaint). In this case, however, there is no delay whatsoever in seeking the amendment. The Amended Complaint increases the number of acres of taken property due to Border Patrol activity that occurred between August and November 2006. The facts of this activity were not known when the original Complaint was

filed, and some activity occurred as recently as a few weeks ago. The Plaintiffs have proposed to amend their Complaint immediately following these events. Thus, there has been no delay in seeking the amendment, and the motion should be granted. *See State of Alaska,* 15 Cl. Ct. at 276 (court granted amendment even though 13 months had passed since filing the original complaint, where defendant could not show deliberate tardiness by plaintiff).

Likewise, this lawsuit is in its initial stages. Written discovery has just been exchanged; no depositions, however, have even been noticed. Discovery is set to close on February 9, 2007; thus, this case is months away from trial on the merits. Therefore, as the court noted in *System Fuels, Inc. v. United States,* 65 Fed. Cl. 163 (2005):

> In this case, the complaint identifies that System Fuels filed suit both on its own behalf and on behalf of Entergy Arkansas, and the takings claim arose out of that same set of transactions and occurrences that led to the contract claim and good-faith-and-fair-dealing claim. Given these circumstances, the government had sufficient notice that it faced a broader claim, and it would not be prejudiced by relation back.

*Id.* at 171; *see also Scott Timber Co. v. United States*, 44 Fed. Cl. 170, 182 (1999) ("Nor do plaintiff's amendments come on the eve of trial, like many of the motions to amend that the courts have found it necessary to deny.")

## III. This Amendment Raises No New Legal Theories of Liability or Recovery

Prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party. *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986). This basis for finding prejudice, however, essentially applies where the amendment is offered shortly before or during trial. *Id.; see also Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (denying motion to amend did not constitute abuse of discretion where amendment including new claim was offered after discovery was virtually complete and defendant's motion for summary judgment was pending before the court).

Here, the Amended Complaint does not introduce any new legal theories nor does it change the factual basis of the complaint; the same operative facts support the original and amended complaint. Rather, the amendment merely increases the number of acres (all of which are adjacent to one another) of taken property, owned by additional, but related, Plaintiffs. Thus, the proposed amendment will not require the Defendant to conduct extensive additional research as the Amended Complaint is based on the

identical legal theory to that in the Complaint. The parties are currently engaging in discovery. Although some additional factual discovery may arise due to the increase in acreage that would be the subject of the litigation, this is not sufficient to show prejudice, especially since the discovery phase is scheduled to continue for two more months, and a trial date has not been set. *See State of Alaska,* 15 Cl. Ct. at 280 (court found that any additional discovery was simply an inconvenience, not prejudice, particularly since no trial date had been set).

## IV. The Additional Acres of Land and Entities Are Closely Related to the Original Subject Property and the Original Plaintiffs; Therefore, This Amendment Will Not Unduly Burden or Prejudice Defendant

The general rule is that "amendments to pleadings may relate back to include new parties when the claims of both parties are 'sufficiently closely related to warrant the conclusion that the government received adequate notice of the possibility that it might have to defend against a broader claim.'" *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 171 (2005) (quoting *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1369 (Fed. Cir. 2004); *see also* RCFC 15(c).

In this case, the operative facts presented in the Amended Complaint are identical to those presented in the original Complaint. They merely occur on additional property contiguous to the subject property of the original Complaint, which is owned by related entities. *Exhibit C* (Wick Decl. ¶ 5.) All of the Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, Otay International LLC, D & D Landholdings, and International Industrial Park, are subsidiary entities of National Enterprises, Inc. *Exhibit C* (Wick Decl. ¶ 6.)

Moreover, Defendant has been on notice that the Complaint might be amended since the date of the filing of the parties' Joint Preliminary Status Report. The Joint Preliminary Status Report notes that Defendant's activities had begun to interfere with the use of additional land owned by the Plaintiffs, and that the Plaintiffs may seek to amend their Complaint to allege a taking of this additional land. Pls.' Joint Prelim. Status Report at 3 n.1 (Sept. 19, 2006). The Defendant therefore received notice that it may have to defend against a broader claim. Thus, the amendment will not unduly burden or prejudice the Defendant, and the amendment should be allowed.

## Conclusion

For the reasons set forth above, the Plaintiffs ask this Court to grant their motion to amend their Complaint.

Respectfully submitted,

s/ Roger J. Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: December 4, 2006

Counsel for Plaintiffs