**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| D & D LANDHOLDINGS, a limited Partnership,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | (No. 06-877 L)<br>Hon. Margaret M. Sweeney |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER AND SUGGESTION OF CONSOLIDATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 1

PROCEDURAL HISTORY .......... 4

ARGUMENT .......... 5

I. Standards for Consolidating Cases .......... 5

II. This Court Should Deny Defendant's Motion Because The Cases At Issue Are At Different Stages Of Preparation, They Have Significant Factual and Legal Differences, And The Motion Contravenes Judge Baskir's December 14 Order .......... 6

A. The Cases At Issue Are At Different Stages Of Preparation .......... 6

B. Contrary to Defendant's Argument, The Facts and Issues Underlying Liability and Damages Among The Cases Are Substantially Dissimilar And Militate Against Consolidation .......... 7

C. Judge Baskir's Order Denying D&D's Attempt To Join The *Otay Mesa* Case .......... 9

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

*Karuk Tribe of Cal. v. United States*, 27 Fed. Cl. 429 (1993) ..........................................5, 9

*Lowry Econ. Redevelopment Auth. V. United States*, 71 Fed. Cl. 549 (2006)...............5, 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| D & D LANDHOLDINGS, a limited Partnership, | ) | |
| Plaintiffs, | ) | |
| v. | ) | (No. 06-877 L)<br>Hon. Margaret M. Sweeney |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER AND SUGGESTION OF CONSOLIDATION**

Plaintiff, D&D Landholdings ("D&D"), respectfully submits this opposition to Defendant's Motion To Transfer And Suggestion Of Consolidation ("Motion"). In its Motion, Defendant seeks transfer of this case to the Hon. Lawrence M. Baskir, and consolidation of this case with *Int'l Indus. Park, Inc. v. United States*, No. 06-876L (Hon. Thomas C. Wheeler) and *Otay Mesa Property, L.P. v. United States*, No. 06-167L (Hon. Lawrence M. Baskir) for all purposes.

Defendant's Motion should be denied for three reasons: (1) the cases are at significantly different stages of preparation; (2) the factual and legal differences are substantial enough to require separate evidence and trials; and (3) the Hon. L. Baskir has already ruled that the cases should not be combined into one action. Accordingly, Plaintiff requests that the Court deny Defendant's Motion and allow the parties to proceed with the litigation of this case.

**Factual Background**

This is a physical taking case arising out of the Government's occupation of D&D's properties, which are two parcels of land totaling approximately 150 acres and located in California along the United States/Mexico border. The first of these parcels, APN 648-050-03,

648-050-04, 648-080-02, 648-080-13, 648-080-14, 648-080-15, and 648-040-22, consists of approximately 140 acres acquired by D&D in 2000 and 2003. The second parcel is APN 648-011-03 and consists of approximately 18 acres. For the past several years, D&D's land has been continuously occupied by agents from the United States Border Patrol, who have patrolled and made use of the land in the performance of their official duty to prevent illegal immigration from Mexico.

In recent years, the Government has significantly increased its efforts to stop illegal immigration in the San Diego area. As part of these efforts, in 2001, the Government completed construction of what is known as the Secondary Fence.[1] The Secondary Fence, which is made of steel mesh, begins three miles from the Pacific Ocean, and was designed to extend fourteen miles past D&D's property and merge with the natural barrier created by nearby Otay Mountain. The purpose of this design, in theory at least, is to create an impassable barrier to illegal immigrants attempting to cross the U.S.-Mexico border. Instead of merging the Secondary Fence with Otay Mountain, however, the Government has constructed only 13 of the 14 miles, and has abruptly terminated the fence at the boundary of D&D's property. The end of the fence has been at D&D's property since 2001.

By failing to merge the Secondary Fence with Otay Mountain, the Government has created a natural gateway that funnels illegal immigrants to travel toward the open end of the fence rather than to attempt to climb over the fence. The open end of the Secondary Fence thus creates a funneling effect that causes illegal immigrants to travel through D&D's property in

[1] The Secondary Fence runs parallel to the San Diego Border Primary Fence, which the Government began constructing in the early 1990's. This fence begins at the Pacific Ocean and stretches 14 miles eastward to Plaintiff's properties. Although the Primary Fence is eleven feet high and is made of steel matting, it can be easily climbed. The Secondary Fence cannot easily be climbed.

order to enter the United States. In this respect, it should be noted that the completion of the last mile of the Secondary Fence would likely force illegals further eastward, relieving D&D's property and reducing the Border Patrol's occupancy of that property.

To deal with the funneling effect of the incomplete Secondary Fence, the Border Patrol must continuously patrol D&D's property and make use of the property in a variety of ways, *e.g.*, the installation of sensors, floodlights, and similar interdiction activities. Indeed, until the Secondary Fence is merged with Otay Mountain, the Border Patrol will constantly occupy D&D's property in order to round up and capture illegal immigrants. Thus, the direct, foreseeable, and intended effect of Defendant's construction of the Border Fence, particularly the Secondary Fence, has been to channel illegal immigrants to travel through D&D's properties, where Border Patrol agents are stationed to arrest and detain them.

With the construction of the Secondary Fence in 2001, the Border Patrol began flooding D&D's properties with more and more agents to capture and deport the daily stream of illegal immigrants. These immigrants climb over the Primary Fence and, because they are unable to climb over the Secondary Fence, are funneled to the end of the Secondary Fence, which ends on D&D's lands. As a result, armed Federal agents have permanently occupied a substantial portion of undeveloped but highly developable acres of land owned by D&D.

As part of this occupation, Border Patrol agents have actually chased D&D's agents off D&D properties while demanding proof from D&D's agents that they were entitled to be on the property. Indeed, Border Patrol agents have advised D&D's agents that the Border Patrol "owns" D&D's property and have indicated that they do not distinguish between public and private property in the performance of their duties along the border. D&D cannot make any reasonable use of its property under these circumstances.

**Procedural History**

D&D filed its Complaint in this case on December 22, 2006. Defendant filed its Answer on February 16, 2007. The parties filed their Joint Preliminary Status Report on April 10, 2007; the preliminary status conference is scheduled for April 30, 2007. The parties have agreed to exchange RCFC 26 initial disclosures on May 4, 2007.

On December 4, 2006, as Border Patrol activities began to expand onto its properties, D&D sought to combine its claims with those in *Otay Mesa Property, L.P. v. United States* (No. 06-167L) by joining in an unopposed motion to amend the Complaint in that case. Although Defendant did not oppose this motion, in an Order dated December 14, 2006, Judge Baskir denied D&D's request to add its claims to the pending suit, stating that D&D "may file [a] separate, individual complaint[] with the Court of Federal Claims." Order, Dec. 14, 2006. Motion at Ex. H.

Having been denied joinder in *Otay Mesa*, D&D filed its own suit on December 22, 2006, which was assigned to this Court. D&D's lawsuit has proceeded along its own track, while discovery in *Otay Mesa* worked its way toward completion.

In view of Judge Baskir's December 14, 2006 Order that D&D's claims were to be filed as a separate suit, D&D did not file a Notice of Indirectly Related Cases. D&D strongly believed Judge Baskir's December 14, 2006 Order to have already determined that its claims were not appropriate for consolidation with the claims set forth in *Otay Mesa* which the Court had already consolidated in an order date November 1, 2006. *See* Mot. Ex. A.

## ARGUMENT

### I. Standards for Consolidating Cases

RCFC 40.2(b) states as follows:

> [W]henever it appears to a party that there are two or more cases before the court that present common issues of fact and that transfer, consolidation, or the adoption of a coordinated discovery schedule would significantly promote the efficient administration of justice, the party may file a Notice of Indirectly Related Case(s).

RCFC 40.2(b). RCFC 42.1 provides that, in the event the relevant cases are assigned to different judges, a motion to transfer may be made pursuant to RCFC 40.1, with a suggestion of the appropriateness of consolidation. RCFC 42.1.

RCFC 42(a), which grants the Court discretion to consolidate cases, states as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

RCFC 42(a).

The appropriateness of consolidating claims depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation. *Karuk Tribe of Cal. v. United States*, 27 Fed. Cl. 429, 433 (1993) (citing *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y.1987)). In exercising its discretion to consolidate cases, the Court must first determine whether the cases present a common question of law or fact. *Lowry Econ. Redevelopment Auth. V. United States,* 71 Fed. Cl. 549, 553. Thus, the mere fact that cases involve some common issues of law or fact does not dictate transfer or consolidation.

**II. This Court Should Deny Defendant's Motion Because The Cases At Issue Are At Different Stages Of Preparation, They Have Significant Factual and Legal Differences, And The Motion Contravenes Judge Baskir's December 14 Order**

Defendant argues that the three cases should be transferred and consolidated because the cases "are based on the same operative facts and raise the same legal issues . . . [and consolidation] would significantly promote the efficient administration of justice, thereby preserving the resources of the Court and the parties involved in these cases." Mot. at 3. For the reasons below, Defendant's arguments are without merit and its Motion should be denied.

**A. The Cases At Issue Are At Different Stages Of Preparation**

Contrary to Defendant's argument, this case is at an entirely different stage of preparation than *Otay Mesa*. In *Otay Mesa*, the parties filed a Joint Status report on April 6, 2007 advising the Court that discovery was completed. The parties are preparing for summary judgment briefing with the final reply brief due on December 3, 2007. As noted above, the parties in this case have just filed their JPSR, have yet to conduct the preliminary joint status conference and have yet to exchange the initial disclosures required by RCFC 26. In this connection, Defendant's Motion fails to identify what the discovery schedule would be in the event the cases were consolidated, *i.e.*, whether the schedule in *Otay Mesa* would be reopened or if a new schedule would be established.

That aside, it is clear that discovery in this case will necessarily differ than that in *Otay Mesa*. There is no question that the occupation of D&D's land by Government agents occurred well after the occupation of the land in *Otay Mesa.* Moreover, there is no question that this case involves different property parcels, different witnesses and, perhaps, different documents. Because discovery has not commenced in this case, it is impossible to ascertain precisely what evidence and witnesses will be required to prove D&D's claims. Indeed, it would prejudice

D&D to foreclose its ability to develop its proofs through discovery since it is entirely possible that discovery will reveal new and different evidence from that obtained in *Otay Mesa*.

Because the cases are at entirely different stages of preparation and discovery, Defendant's Motion should be denied.

**B. Contrary to Defendant's Argument, The Facts and Issues Underlying Liability and Damages Among The Cases Are Substantially Dissimilar And Militate Against Consolidation**

Defendant argues that the legal and factual differences among the complaints are "largely irrelevant" in view of the "two core issues that exist in all of the complaints." Motion at 14. For this reason, Defendant argues, the legal and factual differences do not weigh against transfer. Mot. at 14. Defendant is wrong.

As noted, the Border Patrol activities expanded to include D&D's property long after the occupation of the land in *Otay Mesa*. This difference in time and circumstances, including the properties at issue, the witnesses who will testify as to the occupation, as well as the possibility of additional relevant documentation, underscore the factual and legal differences between the cases. In addition, because discovery has not yet commenced, it is impossible to determine with any certainty, as Defendant argues, that there are no meaningful factual or legal differences between the cases.

Although many of the background facts alleged in this case are similar to the background facts alleged in *Otay Mesa,* there remain significant differences in the factual allegations that relate to liability and damages in each of these cases. This weighs heavily against consolidation of these cases. For example, in *Otay Mesa*, the Plaintiffs allege that the Government constructed a permanent shelter for its agents and other facilities, such as numerous portable floodlights, on Plaintiffs' property. *See Otay Mesa* Complaint ("Compl."), opening paragraph, ¶10. In addition, the *Otay Mesa* Plaintiffs allege that the Government had pitched tents on their property and

established a training facility for its agents. *Otay Mesa* Compl. at ¶ 11. These facts, which are unique to *Otay Mesa*, directly relate to liability in that case.

In this case, D&D does not assert the above-described allegations as part of its liability case. On the other hand, D&D does assert that the Border Patrol has buried ground vibration sensors on its property which are triggered almost nightly, resulting in Border Patrol vehicular response by armed agents. As a result, the cases have substantial differences in the facts relating to their liability cases. For this reason alone, consolidation of these cases would be improper.

Similarly, because each parcel of land must be separately appraised, the damages cases for each of the cases will involve substantially different valuations. In *Otay Mesa*, the Plaintiffs allege that the land subjected to the taking, approximately 155 acres of prime development land, is zoned for landfill, international racetrack, and heavy and light industrial use. *Otay Mesa* Compl. at ¶¶ 1, 6. Many of these acres are ready for immediate development, while the remaining acres are in various stages of grading development. *Id.* In this case, D&D alleges that it has a total of approximately 148 acres of land which are zoned for heavy to light industrial use, and are in various stages of grading development. It is thus patently clear that separate appraisals of Plaintiffs' land parcels will have to be performed to assess damages in each of the cases. This will require different analyses in the areas of highest and best uses, parcel size, comparables and zoning. Again, the dissimilarity of these facts and inquiries weighs against consolidation of the three cases.

Because of the factual differences between these cases, there is a strong possibility that confusion could be created among the various factual proofs that are required for each case. Moreover, D&D could suffer unnecessary delay while awaiting the presentation of proofs for one of the other plaintiffs. In this respect, the most expeditious way of resolving these cases is to allow each case to proceed independently before its assigned judge. Thus, contrary to

Defendant's argument, the judicial economy that might result from consolidation is greatly outweighed by the unnecessary delay and confusion that likely would result such consolidation. *See Karuk Tribe of Cal*, 27 Fed. Cl. at 433.

Most importantly, it is likely that D&D will be required to prove improper occupancy by Government agents with respect to each of its parcels and how such occupancy has affected the value of each parcel. In this respect, regardless of what the Plaintiffs in *OtayMesa* are able to prove as to their parcels of land, the D&D parcels will still require separate proof. It should also be noted that D&D could still prevail in its action even if the Plaintiffs in *Otay Mesa* do not. Defendant's motion to consolidate ignores these important distinctions between the cases.

In short, the consolidation proposed by Defendant will not promote "judicial economy;" rather, it will result in an unwieldy proceeding likely to be burdened with unnecessary confusion and delay. In these circumstances, consolidation is simply not appropriate.

### C. Judge Baskir's Order Denying D&D's Attempt To Join The *Otay Mesa* Case

Judge Baskir's December 14, 2006 order in *Otay Mesa* effectively ruled that factual differences among the cases precluded joining D&D claims in the *Otay Mesa* Complaint. As noted by Defendant in its Motion, the *Otay Mesa* case was originally filed as a single claim by three related Plaintiffs (Otay Mesa Property, L.P., Rancho Vista Del Mar, and Otay International, Inc.), involving three adjacent parcels of land. Mot. at 1-2. In response to the parties' discussion at the preliminary status conference, Judge Baskir first ordered the three claims severed and assigned different docket numbers, then ordered them consolidated. *See* November 1, 2006 Order (Mot. Ex. A). Importantly, the November 1, 2006 order specifically stated that the three *Otay Mesa* Plaintiffs were not required to file separate complaints. *Id.* ¶ 4.

Believing its claims to be similar to the three already consolidated, on December 4, 2006, D&D attempted to join its claims to the *Otay Mesa* suit. In the parties' Unopposed Motion to

Amend Complaint, D&D argued that it should be allowed to join the suit because: (1) it would not result in any delay in litigating the various Plaintiffs' claims; (2) the various claims were based upon the same "operative facts" and asserted similar legal theories of relief; and (3) the addition of D&D would not prejudice the Defendant's ability to prepare its case. To be sure, D&D believed its case appropriate for combination with the pending claims of the other three plaintiffs, as Defendant states. Nonetheless, Judge Baskir rejected D&D's arguments, stating that "D&D Landholdings . . . may file [a] separate, individual complaint[] with the Court of Federal Claims." Mot. at Ex. H, ¶ 3. D&D complied with this Order by filing a separate Complaint on December 22, 2006.

Properly read, the December 14, 2006 Order indicates that Judge Baskir already considered the same arguments advanced by Defendant in support of its Motion, *viz.*, that the cases present common questions of law or fact and that the interests of judicial economy outweigh the potential for delay, confusion and prejudice that may result from consolidation. *See Lowry Econ. Redevelopment Auth.*, 71 Fed. Cl. at 553. In denying the addition of D&D to the *Otay Mesa* complaint, and directing D&D to file its own complaint, Judge Baskir flatly rejected as insufficient the arguments regarding the commonality of the facts and legal issues, as well as the lack of delay and prejudice. As a result, Judge Baskir already has ruled against the arguments underlying Defendant's Motion requesting transfer and consolidation.

Judge Baskir's refusal to allow D&D to join the same suit which Defendant now argues is an appropriate case for consolidation is consistent with his earlier order in *Otay Mesa* dated November 1, 2006. That order severed the claims of each of the three named Plaintiffs in *Otay Mesa* and directed the Clerk of the Court to treat each plaintiff's claims as separate actions and to assign separated docket numbers to each action. Judge Baskir then consolidated the newly

severed actions pursuant to RCFC 42(a) and specifically ruled that no separate complaints would be required.

Had he wished to, Judge Baskir could have ordered D&D's claim consolidated with the three other cases that he had already consolidated. Significantly, he did not. Indeed, in direct contrast to his November 1, 2006 order, Judge Baskir's December 14, 2006 order did not direct, or even suggest, that *Otay Mesa* be consolidated in any way with this case. More importantly, unlike his November 1, 2006 order, Judge Baskir in his December 14, 2006 order directed D&D to file its own separate complaint. Judge Baskir's markedly different approaches in the December 14, 2006 and November 1, 2006 orders strongly suggests that he does not view this case as meeting the requirements for consolidation with *Otay Mesa*.

Although there may be some technical differences between joinder as an additional Plaintiff and consolidation, the essence of both procedures is the same: common issues of law and fact which allow for joint discovery, preparation and trial. D&D presented this argument to Judge Baskir and lost. Defendant now presents the very same argument, long after discovery has been completed in *Otay Mesa*. In this respect, Defendant's attempt to consolidate raises the issue of which discovery schedule prevails – the schedule in *Otay Mesa*, where discovery is closed; which would preclude D&D from obtaining any further discovery, or the schedule in this case, in which event the discovery in *Otay Mesa* would be reopened.

In addressing the December 14, 2006 order, Defendant contends that "[Judge Baskir] merely stated [in his order] that D&D [] would first have to file [a] separate case[], after which Judge Baskir would consider consolidating the [case], as indirectly related, with *Otay Mesa*." Mot. at 17. This is wholly incorrect. Nowhere in his December 14, 2006 order did Judge Baskir intimate that his decision to require D&D to file its own separate cause of action would lead to his later consideration of consolidating the cases. To the contrary, in the context of the

arguments presented by D&D in its attempt to join *Otay Mesa*, Judge Baskir's December 14, 2006 order strongly suggests that he considered the elements required for consolidation and ruled that those elements had not been met.

In sum, Judge Baskir's December 14, 2006 already considered, and rejected, Defendant's arguments in support of its Motion. Accordingly, Defendant's Motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion to Transfer and Suggestion of Consolidation and direct the parties to proceed with the litigation of this case.

Respectfully submitted,

/s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
Gregory T. Jaeger
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

Dated: April 27, 2007